Bissell, J.,
delivered the opinion of the court.
Mary Kelly, the appellee, had been for some years the owner of a lot in the city of Aspen. Taxes were assessed on it from time to time, until the assessment for the year 1888, which amounted to fifty odd dollars, was levied and left unpaid. The following year the property was advertised for sale under the statute and bought in by the county, which *302 ultimately got a deed to it. The title as acquired by the county was conveyed to the appellant, who afterwards paid some thirty dollars of subsequent taxes, and the present suit was brought to set aside that sale and cancel the deed because of the invalidity of the tax sale. Some question was made on the trial respecting the advertisement, and the proof of it, based on the appellant’s failure to show one which conformed to the statute. The decision is put on another ground, and no further reference will be made to this matter. As suming it was regular and was begun in May and continued for four weeks, and was sufficient to warrant the sale of property for nonpayment of taxes on the 3d of June, 1889, it may be said the treasurer then started to sell real property for delinquent taxes. Sales were made on the 3d, 4th, 5th, 6th and 7th days of June, if not after.' According to the evidence, this property was not offered until the 5th, when it was put up and no bid was made for it. On the following day, according to the recital of the deed, the treasurer being satisfied that a sale could not be effected, bid'it off for the countju This was on the 6th. Neither the recital in the deed nor the evidence really shows the property to have been reoffered on the 6th, although perhaps an inference of that sort might be drawn from the fact that the property was put up on the 6th and bid off by the county. Aside from this inference, there is no proof about it. The sales were further continued on that day and other properties sold, which was true also of the succeeding day. Whether the 7th was the last day on which sales were made in that month, is not made clear. The only thing absolutely certain is, the sale of this particular piece of property and the purchase by the county was not at the conclusion of the entire sale, nor was it shown to have been offered more than once, and thereby opened to the bids of other purchasers. The record discloses that an offer was made to pay the holder of the title the money which he had paid the county prior to the suit, though the extent and character of the offer is not shown. The purchaser paid sixty-one dollars and some cents to the county, *303 and the subsequent taxes of thirty dollars; and, on the conclusion of the trial, the court held Mrs. Kelly entitled to recover, set aside the tax deed as invalid, computed the interest which she was bound to pay, and divided the costs, the division being apparently on the basis of the refusal to accept the offer, and in the exercise of the equitable powers which the court possesses in this class of cases.
The errors assigned do not justify a reversal of the judgment. That the sale was void seems to have been clearly settled by the supreme court. Dyke v. Whyte, 17 Colo. 296; Morris et al. v. St. Louis Nat. Bank, 17 Colo. 231; Mitchell v. Arkell, 3 Colo. App. 253.
The Dyke Case is put on the precise ground that since, under the statute, the county had a right to acquire title to all the property, subject to the tax, by simply bidding the amount levied on it, as contradistinguished from the right of the purchaser, who is only permitted to acquire a title to so much of it as will be taken by the bidder in satisfaction of the lien, it must exactly pursue the statute in order to acquire the title. The theory of the law is that full opportunity must be given to private bidders, since, if a sale can be effected to them, the rights of the taxpayers are more fully protected than in those cases where the county itself becomes the purchaser. Under these circumstances, it must appear the property was offered and reoffered, and only finally bid in by the county at the conclusion of the tax sale, when all bids have ceased, and there are no persons or parties willing to make an offer on the unsold property. This is undoubtedly the correct construction of the statute, and is likewise the law of the state. The court did not err, therefore, when it adjudged the sale invalid.
We discover no error in the computation of the interest, which the owner was bound to pay in order to entitle her to be reinvested with the title and to a removal of the cloud. Those sections which are referred to as providing means and methods of redemption are inapplicable to cases of this description. We cannot see that the court made a mistake in *304 .computing the interest or determining the sum which the owner ought to pay.
We are not inclined to disturb the judgment because of the distribution of costs, or the action which the court took in dismissing the case as to part of the defendants. The abstract is not full enough to enable us to reach a definite or satisfactory conclusion on the subject, and since, in equity cases, the matter of costs rests largely with the judge who tries the cause, we are not inclined to disturb the judgment, where we are not clearly satisfied a radical error has been committed and a wrong done to one or the other of the litigants.
Perceiving no error in the record, we must affirm the judgment, which is accordingly done.

Affirmed.